IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TEOFILO VASCO, individually and on behalf of all others similarly situated, ) ) ) | No. 15-cv-4623-MAK |
| Plaintiff, ) ) ) | |
| v. ) ) | |
| POWER HOME REMODELING GROUP LLC, ) ) ) | |
| Defendant. ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

BERGER & MONTAGUE, P.C.
Shanon J. Carson (Pa. Bar #85957)
scarson@bm.net
Arthur Stock (Pa. Bar #64336)
astock@bm.net
Lane L. Vines (Pa. Bar #80854)
lvines@bm.net
1622 Locust Street
Philadelphia, PA  19103
Tel.:  (215) 875-3000
Fax:  (215) 875-4604

HUGHES ELLZEY, LLP
W. Craft Hughes
craft@hughesellzey.com
Jarrett L. Ellzey
jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. #1120
Galleria Tower I
Houston, TX  77056
Tel.:  (888) 350-3931
Fax:  (888) 995-3335

*Counsel for Plaintiff and the Class*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF THE ACTION ........................................................................... 1

III.    THE SETTLEMENT AND NOTICE PROGRAM ............................................. 3

IV.     ARGUMENT ....................................................................................................... 5

      A.    The Class Should Be Certified for Final Approval of the Settlement ................. 6

           1.    The Elements of Rule 23(a) Are Satisfied ............................................ 6
                a)   Numerosity ................................................................................. 6
                b)   Commonality .............................................................................. 7
                c)   Typicality ................................................................................... 8
                d)   Adequacy .................................................................................... 8

           2.    The Requirements of Rule 23(b)(3) Are Also Met ................................ 9
                a)   Predominance ............................................................................. 9
                b)   Superiority ................................................................................ 10

      B.    Final Approval of the Settlement Is Warranted ................................................. 11

           1.    The Settlement is Procedurally Fair .................................................... 11

           2.    The Settlement Meets the *Girsh* Factors and is Substantively Fair ........ 12
                a)   The Complexity, Expense and Likely Duration of the Action ......... 13
                b)   The Class's Reaction to the Settlement ........................................... 14
                c)   The Stage of Proceedings and Amount of Discovery Completed .... 14
                d)   The Risks of Establishing Liability and Damages .......................... 15
                e)   The Risk of Maintaining the Class Action Through Trial ............... 17
                f)   Ability of Defendant to Withstand a Greater Judgment .................. 17
                g)   The Range of Reasonableness of the Settlement ............................. 18

           3.    The *Prudential* and *Baby Products* Considerations Are Also Satisfied.. 19

V.      CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................................... 5

*Baby Neal v. Casey,*
43 F.3d 48 (3d Cir. 1994) .................................................................................. 7

*Barel v. Bank of Am.,*
255 F.R.D. 393 (E.D. Pa. 2009)........................................................................ 8, 9

*Blair v. CBE Group, Inc.,*
309 F.R.D. 621 (S.D. Cal. 2015) ...................................................................... 17

*Chiang v. Veneman,*
385 F.3d 256 (3d Cir. 2004)............................................................................... 7

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir. 2010)............................................................................... 11

*Gehrich v. Chase Bank U.S.,*
No. 12-cv-5510, 2016 U.S. Dist. LEXIS 26184 (N.D. Ill. Mar. 2, 2016) ........................ 8, 9, 20

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975)............................................................................... 12

*Good v. Nationwide Credit, Inc.,*
No. 14-cv-4295, 2016 U.S. Dist. LEXIS 32154 (E.D. Pa. Mar. 14, 2016) ............................. 10

*Hawk Valley, Inc. v. Taylor,*
301 F.R.D. 169 (E.D. Pa. 2014).......................................................................... 6, 7

*In re Aetna Inc. Secs. Litig.,*
MDL No. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ....................................... 18

*In re Auto. Refinishing Paint Antitrust Litig.,*
MDL 1426, 2004 U.S. Dist. LEXIS 29161 (E.D. Pa. Sept. 27, 2004) .................................... 12

*In re Baby Products Antitrust Litig.,*
708 F.3d 163 (3d Cir. 2013)............................................................................... 20

*In re Capital One Tel. Consumer Prot. Act Litig.,*
80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................................. 19, 20

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................. 13, 17

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ...................................................................... 14

*In re Diet Drugs Prods. Liab. Litig.*,
    MDL 1203, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) ........................... 16

*In re Facebook, Inc. IPO Secs. & Derivative Litig.*,
    MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ...................... 11

*In re Flonase Antitrust Litig.*,
    951 F. Supp. 2d 739 (E.D. Pa. 2013) ................................................... 12, 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) .......................................................... 8, 11, 14

*In re Pet Food Prods. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ........................................................................ 13

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012) .................................................................. 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .................................................... 9, 11, 15, 20

*In re Ravisent Techs., Inc. Secs. Litig.*,
    No. 00-cv-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) .................. 8

*In re Telik, Inc. Secs. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................... 11

*In re Urban Outfitters, Inc., Secs. Litig.*,
    No. 13-cv-5978, 2016 U.S. Dist. LEXIS 24915 (E.D. Pa. Feb. 29, 2016) ................ 7

*In re ViroPharma Inc. Secs. Litig.*,
    No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ................. 12

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................. 8, 10, 17

*Kolinek v. Walgreen Co.*,
    No. 13-cv-4806, 2015 WL 7450759 (N.D. Ill. Nov. 23, 2015) .......................... 19

*Lenahan v. Sears, Roebuck & Co.*,
    No. 02-cv-0045, 2006 WL 2085282 (D.N.J. July 24, 2006) ............................ 13

*Moore v. GMAC Mortg.*,
  No. 07-cv-4296, 2014 U.S. Dist. LEXIS 181431 (E.D. Pa. Sept. 19, 2014) ........................... 12

*Pennwalt Corp. v. Plough*,
  676 F.2d 77 (3d Cir.1982) ....................................................................................................... 11

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005) .............................................................................................. 16

*Reibstein v. Rite Aid Corp.*,
  761 F. Supp. 2d 241 (E.D. Pa. 2011) ................................................................................. 6, 17

*Rose v. Bank of Am. Corp., No. 11-cv-02390-EJD*,
  No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ............... 19

*Rougvie v. Ascena Retail Grp., Inc.*,
  No. 15-cv-724, 2016 U.S. Dist. LEXIS 99235 (E.D. Pa. July 29, 2016) .............. 13, 14, 18, 19

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ............................................................................................. 6, 7, 8

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) .................................................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
  396 F.3d 96, 116 (2d Cir. 2005) .............................................................................................. 11

## Statutes

Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") .................................................. 9

Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA") .................................... 2

## Rules

Fed. R. Civ. P. 16(a)(5) ................................................................................................................... 11

Fed. R. Civ. P. 23(a) ............................................................................................................. 6, 7, 8, 17

Fed. R. Civ. P. 23(b)(3) ............................................................................................................ 6, 9, 10

Fed. R. Civ. P. 23(e) ......................................................................................................................... 5

Plaintiff Teofilo Vasco ("Plaintiff"), on behalf of himself and the Class,[1] respectfully submits this memorandum of law in support of Plaintiff's Motion for Final Approval of Class Action Settlement.  Following a hearing on May 13, 2016, the Court entered an Order granting preliminary approval of the Settlement and directing that notice of the Settlement be given to the Class, among other things.  In accord with that Order, the Notice was issued to the Class and Plaintiff now moves the Court to enter the Parties' proposed Final Approval Order and Entry of Judgment, certifying the Class and granting final approval of the Settlement as being fair, reasonable and adequate, pursuant to FED. R. CIV. P. 23.[2]

## I.      INTRODUCTION

Plaintiff and Defendant Power Home Remodeling Group LLC ("PHRG" or "Defendant") reached an agreement to settle this class action litigation for a $5.2 million non-reversionary cash payment.  The proposed Settlement warrants final approval.  The result here is not only fair, reasonable and adequate but is commendable in the circumstances.  This Settlement will provide a certain, tangible and immediate benefit to Class Members and will avoid the costs, uncertainties and risk of receiving no redress attendant with continued litigation.

## II.     SUMMARY OF THE ACTION[3]

On August 14, 2015, Plaintiff filed a class action complaint ("Complaint") (Dkt. 1) against PHRG in this Action on behalf of a nationwide class for violations of the Telephone Consumer

---

[1] Unless otherwise stated, all capitalized terms used in this Memorandum are as defined in the Settlement Agreement dated May 5, 2016 (the "Settlement Agreement" or "Settlement").

[2] Plaintiff and his counsel have filed a separate motion contemporaneously herewith for approval of attorneys' fees and costs to Plaintiff's Counsel and a Service Award to Plaintiff.

[3] A more detailed description of this Action is set forth in the Declaration of Arthur Stock (the "Stock Decl.") filed herewith.  References to "Stock Decl. ¶ __" are to paragraphs therein.

Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"). Among other things, the TCPA prohibits the use of "any automatic telephone dialing system or an artificial or prerecorded voice" in calling cellular telephones for non-emergency purposes without "prior express consent" from the recipient of the calls. 47 U.S.C. § 227(b)(1). Plaintiff alleges that Defendant violated the TCPA by calling the cellular telephones of Class Members for telemarketing purposes without obtaining the requisite prior consent of the persons called.

On October 22, 2015, Defendant filed its Answer (Dkt. 10) to the Complaint, denying any and all liability with respect to the claims alleged. Defendant also asserted several affirmative defenses, including that PHRG obtained the requisite consent prior to making calls to the Class Members, among other defenses.

Beginning in December 2015, the parties agreed to mediate this Action and retained the Honorable Diane M. Welsh, U.S. Magistrate Judge for the Eastern District of Pennsylvania (Retired), to serve as an independent mediator (the "Mediator"). Stock Decl. ¶ 9. On February 17, 2016 and March 29, 2016, the Mediator conducted full day mediation sessions between Plaintiff's Counsel, on the one hand, and Defendant's Counsel and Defendant's Insurer, on the other. *Id.* ¶¶ 18-19. On March 29, 2016, the Parties accepted the Mediator's settlement proposal, subject to satisfaction of certain conditions, including the negotiation of a definitive settlement agreement and the approval of the Settlement by the Court in accordance with FED. R. CIV. P. 23. *Id.* ¶ 19.

Prior to agreeing to the Settlement, Plaintiff's Counsel conducted a full investigation of the facts and law relating to the matters in this Action, including, but not limited to, the rules and regulations governing the TCPA, the business practices of PHRG, an examination of certain business documents and data produced by PHRG, and interviews of former PHRG employees and

agents.  *Id.* ¶¶ 15-17.  Plaintiff's Counsel analyzed and considered the relative strengths and weaknesses of the Parties' claims and contentions and the benefits the Settlement offers to the Class.  Plaintiff and his counsel, after taking into account the risks, uncertainties and costs of further litigation, are satisfied that the terms and conditions of this Settlement are fair, reasonable and adequate, and that the Settlement is in the best interest of the Class.  *Id.* ¶ 25.

On April 5, 2016, Plaintiff submitted a joint letter to the Court stating that the Parties had made an agreement in principle to settle the Action.  *Id.* ¶ 20.  On May 5, 2016, Plaintiff filed a motion for preliminary approval (Dkt. 23) of the $5.2 million non-reversionary cash Settlement, along with a copy of the Parties' Settlement Agreement.[4]  Following a hearing on May 13, 2016, the Court entered that same day an Order (Dkt. 25) (the "Preliminary Approval Order"), which preliminarily:  certified the Class, approved the Settlement, and appointed Plaintiff as the Class Representative, Plaintiff's Counsel as Class Counsel and Angeion Group, LLC as the Claims Administrator.  Dkt. 25 at ¶¶ 4, 5, 9.  The Preliminary Approval Order also, among other things, approved the proposed form of Notice and Claim Form and directed that the Claims Administrator provide Notice of the Settlement to the Class.  *Id.* at ¶¶ 8, 10, 11.

## III.   THE SETTLEMENT AND NOTICE PROGRAM

In resolving all claims asserted by the Parties, the Settlement provides that PHRG will pay $5,200,000 as follows:  (a) $800,000 to the Claims Administrator for a portion of the Notice and

---

[4] The Settlement will benefit a Class consisting of "all persons who received a call made by or on behalf of Power Home Remodeling Group ('PHRG') on his or her cellular telephone where the call was made using an automatic telephone dialing system and/or pre-recorded or artificial voice messages during the period from October 16, 2013 to April 27, 2016."  Dkt. 25 at ¶ 2.  If approved, the Settlement will resolve all claims asserted by the Parties.  Settlement ¶¶ 2.4, 4.4, 7.7.  The Settlement provides that Authorized Claimants will receive equal shares of the Net Settlement Amount, consistent with the Plan of Allocation.  *Id.* ¶¶ 1.21, 5.3.

3

Administration Costs within fourteen (14) days of the Court's entry of the Preliminary Approval Order; (b) up to an additional $400,000 to the Claims Administrator for additional Notice and Administration Costs within thirty (30) days of receipt of an invoice(s) for services and costs after approval by Plaintiff's Counsel; (c) within three (3) days of the Effective Date, the amounts for attorneys' fees, Litigation Costs, and a Service Award as may be awarded by the Court; and (d) the Net Settlement Amount within seven (7) business days after the Claims Administrator provides a certification stating that that the claims verification process is complete and the Claims Administrator is ready to distribute the Net Settlement Amount to the Authorized Claimants. Settlement ¶ 2.3; Dkt. 25 at ¶ 2.  Moreover, and significantly, as a result of this case, PHRG modified its business practices regarding how it obtains consent for the telephone contacts it makes to prospective customers on a going-forward basis.  *See* Notice at p. 2.

The Settlement provides that Authorized Claimants will receive equal shares of the Net Settlement Amount.  Settlement ¶¶ 1.31, 2.2, 3.6.  The Notice describes the material terms of the Settlement, including that the Net Settlement Amount will be distributed to eligible Class Members who submit valid and timely Claim Forms.  The Notice also advises Class Members of, among other things, Plaintiff's Counsel's application for attorneys' fees and costs, the procedures for opting out or objecting to the Settlement, the Plan of Allocation, and the date, time and location of the Final Approval Hearing.  The Settlement provides for a very simple claims process, where claims can be submitted *via* the settlement website, email, facsimile, or U.S. mail, and claimants need only sign the one-page Claim Form attached to the Notice and need not submit any additional documentation.

On July 12, 2016, the Claims Administrator timely mailed the Notice to 1,104,162 putative Class Members.  *See* ¶¶ 6-8 of Declaration of Brian Devery ("Devery Decl."), attached as Ex. 5 to

Stock Decl.[5]  Beginning that day, the Claims Administrator also provided online access, via its dedicated website, www.phtcpa.com, to the Notice, Claim Form, Preliminary Approval Order, Settlement Agreement, Plaintiff's Complaint and Defendant's Answer.  *Id.* ¶ 9.

A September 14, 2016 deadline was set for Class Members to:  file a Claim Form to participate in the Settlement; request exclusion from the Settlement; or object to the Settlement or Plaintiff's Counsel's request for attorneys' fees and costs.  Dkt. 25.  As of August 19, 2016, the Claims Administrator has received a total of 84,092 Claim Forms.  Devery Decl. ¶ 16.[6]

## IV.   ARGUMENT

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[t]he claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  FED. R. CIV. P. 23(e).  The Settlement here will provide a tangible and valuable recovery to Class Members and avoid the uncertainties and expense of continued litigation.  In seeking final approval of the Settlement, Plaintiff also seeks to have the Class certified for purposes of the Settlement so that Class Members may receive the benefits of the Settlement.  *Accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597 (1997).  As demonstrated below, certification of the Class and final approval of the Settlement is warranted.

---

[5] In accord with the Preliminary Approval Order (¶¶ 11, 13(b)), the Devery Decl. also "confirm[s] the timely compliant mailing of the Notice, efforts to follow-up on any returned mailings and listing the names of all persons for whom they could not confirm a mailing address along with specifically describing their efforts to find all Class Members" and includes "a list of all Settlement Class members without a known mailing address or for whom mailings were returned."

[6] Following the September 14, 2016 deadline and in advance of the Final Approval Hearing scheduled for October 7, 2016, Plaintiff will provide the total number of Claims Forms and requested exclusions from the Settlement that are timely received and will address any unresolved objections in response papers that will be filed by September 29, 2016.  Dkt. 25, Preliminary Approval Order at ¶ 21.

A.      **The Class Should Be Certified for Final Approval of the Settlement**

Rule 23(a) provides that a class action may be maintained if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). In addition, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *accord Reibstein v. Rite Aid Corp.,* 761 F. Supp. 2d 241, 247-48 (E.D. Pa. 2011).

1.      **The Elements of Rule 23(a) Are Satisfied**

As demonstrated below, each of the elements of Rule 23(a) are satisfied.

a)      **Numerosity**

"Satisfaction of the numerosity requirement does not require evidence of the exact number or identification of the members of the proposed class." *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 182 (E.D. Pa. 2014). Rather, the proposed class must be so numerous that joinder is impracticable. *Id.* (finding 4,521 recipients in TCPA action satisfied numerosity). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Based on Defendant's business records, which PHRG used to contact Class Members in the first place, the Class is estimated to include approximately 1.1 million persons. Devery Decl. ¶ 6. As such, numerosity is easily met.

6

b)   <u>**Commonality**</u>

Rule 23(a)(2) requires that " there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  "Commonality requires a showing of the existence of questions of law or fact common to the class."  *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. at 182 ("A common question is one arising from a common nucleus of operative facts.").  "Generally, where defendants have engaged in standardized conduct towards members of the proposed class, common questions of law and fact exist."  *Id.*  "[T]he commonality standard of Rule 23(a)(2) is not a high bar:  it does not require identical claims or facts among class members."  *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004)).  "'The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'"  *Stewart v. Abraham*, 275 F.3d at 227 (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

Here, the claims asserted are predicated on allegations that PHRG engaged in unlawful telemarketing by making calls to Class Members' cellular telephones through the use of ATDS and/or pre-recorded or artificial voice messages, without obtaining the requisite consent. Numerous issues of fact and law exist that are common to all Class Members, such as:

- Whether PHRG's calls used ATDS and/or pre-recorded or artificial voice messages;

- Whether PHRG had proper consent from the recipients of the calls made;

- Whether PHRG's conduct violated the TCPA;

- Whether PHRG's violations were knowing or willful; and

- Whether Members of the Class are entitled to statutory damages under the TCPA.

These common questions are more than sufficient to satisfy commonality.  *See In re Urban Outfitters, Inc., Secs. Litig.*, No. 13-cv-5978, 2016 U.S. Dist. LEXIS 24915, at *3-4 (E.D. Pa. Feb. 29, 2016) (certifying class action).

### c)   <u>Typicality</u>

Rule 23(a)(3) requires that the claims of the class representative are "typical of the claims … of the class." FED. R. CIV. P. 23(a)(3).  "The typicality requirement 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (citation omitted).  "'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *Barel v. Bank of Am.*, 255 F.R.D. 393, 398 (E.D. Pa. 2009) (quoting *Stewart v. Abraham*, 275 F.3d at 227).  Here, typicality is met as Plaintiff claims that PHRG improperly engaged in telemarketing using Class Members' cellular telephones without obtaining prior express consent, and is thus liable for statutory damages under the TCPA.  *See Gehrich v. Chase Bank U.S.*, No. 12-cv-5510, 2016 U.S. Dist. LEXIS 26184, at *13 (N.D. Ill. Mar. 2, 2016) (TCPA case: "The proposed class also satisfies commonality and typicality.  Each class member suffered roughly the same alleged injury:  receipt of at least one phone call … from [defendant] to her cell phone.").

### d)   <u>Adequacy</u>

"A class representative is adequate if:  (1) the class representative's counsel is competent to conduct a class action; and (2) the class representative's interests are not antagonistic to the class's interests." *In re Ravisent Techs., Inc. Secs. Litig.*, No. 00-cv-1014, 2005 U.S. Dist. LEXIS 6680, at *16 (E.D. Pa. Apr. 18, 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 800-01 (3d Cir. 1995)).  Here, nothing suggests that Plaintiff has interests antagonistic to those of the Class.  To the contrary, Plaintiff's interest in maximizing a recovery for the Class is fully aligned with the interests of Class Members generally.  In fact,

Plaintiff has obtained an advantageous Settlement that treats all Class Members in the same fashion and provides real and immediate value to all.  Moreover, Plaintiff's Counsel have substantial experience in litigating consumer class actions and other complex commercial cases.[7]  Plaintiff and his counsel have and will continue to zealously represent the interests of the Class.  Stock Decl. ¶ 24-26.  As such, the adequacy requirement is satisfied.

## 2.     The Requirements of Rule 23(b)(3) Are Also Met

Predominance and superiority requirements under Rule 23(b)(3) are also met.

### a)     Predominance

[T]he predominance inquiry focuses a common course of conduct by which the defendant may have injured class members." *Barel v. Bank of Am.*, 255 F.R.D. at 399 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998)).  For example, in *Barel v. Bank of Am.*, 255 F.R.D. 393, involving consumer claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), the court found predominance satisfied where the defendant was alleged to have engaged "in a common course of conduct" and where "all class members, by definition, were subjected to the same practices."  *Id.* at 399.  *Accord Gehrich v. Chase Bank U.S.*, 2016 U.S. Dist. LEXIS 26184, at *19 ("the common questions listed [in the Commonality section] are the main questions in this case and they can be resolved on a

---

[7] Berger & Montague, P.C. has successfully represented victims of fraud and other misconduct for more than 45 years, recovering over $30 billion for our clients and the classes they have represented.  *See* http://www.bergermontague.com/about-us/history.  Hughes Ellzey, LLP also has significant experience in representing plaintiffs in complex business, consumer and class action litigation, including TCPA claims.  *See*  http://www.hughesellzey.com/gen/practice-areas.html.  *See also* Stock Decl., Ex. 1 and Ex. 2 (attaching firm biographies for Berger & Montague, P.C. and Hughes Ellzey, L.L.P., respectively).

9

class-wide basis without any individual variation, and they predominate over any individual issues.").

Here, predominance is likewise readily demonstrated by PHRG's alleged course of misconduct. Plaintiff and the Class were each the recipients of Defendant's telemarketing calls. Those calls and the contact information of persons called are recorded in PHRG's business records; indeed, PHRG has identified some 1.1 million unique cellular telephone numbers it called. Devery Decl. ¶ 6. Defendant would either have or lack the written consents required by the TCPA for those calls. Thus, the predominance requirement is satisfied.

### b)    <u>Superiority</u>

The superiority requirement of Rule 23(b)(3) must also be satisfied (*i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue). "The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Good v. Nationwide Credit, Inc.*, No. 14-cv-4295, 2016 U.S. Dist. LEXIS 32154, at *22 (E.D. Pa. Mar. 14, 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34).

Here, the Settlement provides redress for Class Members who individually may have potential damages of several thousand dollars at most, and who thus may be economically foreclosed from pursuing any relief on an individual basis. To the extent Class Members did pursue litigation outside of the Class context, the Settlement would avoid potential individual cases that could be filed by the some 1.1 million Class Members for the same claims asserted here.

Based upon the above reasons, certification of the Class is warranted.

**B.**     **Final Approval of the Settlement Is Warranted**

Under Rule 23, a class action cannot be settled without a determination that the proposed settlement is "fair, reasonable and adequate." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 316.   To make this determination, courts consider both procedural fairness and substantive fairness of the proposed settlement.

The Third Circuit has articulated a strong presumption in favor of voluntary settlement agreements in the context of approving class action settlements.   *See, e.g., Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir.1982).   This policy is also evident in the Federal Rules of Civil Procedure, which encourages the settlement of cases.   *See, e.g.*, FED. R. CIV. P. 16(a)(5) (one of the five purposes of a pretrial conference is to facilitate settlement).   This presumption is especially strong in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."   *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 784.   The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement approval proceedings. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010).

**1.**     **The Settlement is Procedurally Fair**

"Class action settlements are entitled to a 'presumption of fairness, adequacy, and reasonableness' when 'reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"   *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *7 (S.D.N.Y. Nov. 9, 2015) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (citations omitted)); *accord In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (settlements that are the product of "arm's-length negotiations conducted by experienced, capable counsel" enjoy a presumption of fairness).

"Courts in this Circuit give considerable weight and deference to the views of experienced counsel as to the merits of an arms-length settlement." *Moore v. GMAC Mortg.*, No. 07-cv-4296, 2014 U.S. Dist. LEXIS 181431, at *9 (E.D. Pa. Sept. 19, 2014) (citing *In re Auto. Refinishing Paint Antitrust Litig.*, MDL 1426, 2004 U.S. Dist. LEXIS 29161, at *7 (E.D. Pa. Sept. 27, 2004)). "'[T]he participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties.'" *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

Here, the Settlement was the result of vigorous arm's-length negotiations among experienced counsel well-versed in the strengths and weaknesses of the claims. The Settlement was reached after engaging in informal fact discovery concerning the Parties' claims and defenses. The Settlement is not only a product of informed, arm's-length negotiations, but also substantial proceedings conducted under the auspices of the Parties' independent mediator, Hon. Diane Welsh (Ret.). Accordingly, the Settlement is procedurally fair.

### 2.  The Settlement Meets the *Girsh* Factors and is Substantively Fair

In examining the fairness, adequacy and reasonableness of a class settlement, courts in the Third Circuit consider the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 742 (E.D. Pa. 2013) (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). However, no single factor is dispositive and "not every factor

12

need weigh in favor of the settlement in order for the settlement to be approved." *In re Processed Egg Prods. Antitrust Litig.,* 284 F.R.D. 249, 277-78 (E.D. Pa. 2012).

**a)**      <u>**The Complexity, Expense and Likely Duration of the Action**</u>

"'This factor captures the probable costs, in both time and money, of continued litigation.'" *Rougvie v. Ascena Retail Grp., Inc.*, No. 15-cv-724, 2016 U.S. Dist. LEXIS 99235, at *53 (E.D. Pa. July 29, 2016) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001)).  The court "must balance the Proposed Settlement against the time and expense of achieving a potentially more favorable result through further litigation.  Where the complexity, expense and likely duration of litigation are significant, the Court will view this factor as weighing in favor of settlement."  *Lenahan* v. *Sears, Roebuck & Co.*, No. 02-cv-0045, 2006 WL 2085282, at *12 (D.N.J. July 24, 2006).  Among other things, courts consider:  (i) the scope and breadth of the litigation; (ii) whether complex issues would likely require multiple experts, at an substantial cost; (iii) the likelihood that discovery would be extensive and require significant resources; and (iv) counsels' representation that litigating the action through pretrial motion practice, formal discovery, and trial would add additional years to the litigation and could deprive class members of relief.  *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010).  These factors are each satisfied here.

It is beyond dispute that class actions involving over 1.1 million class members are complex litigations that would easily be expected to take over a year (at least) to litigate through trial -- costing the parties very significant sums of money.  The scope and breadth of this litigation is vast, as the Class includes over 1.1 million members residing across the country and involves an alleged unlawful course of conduct spanning a three-year period.  As just one example, discovery of Defendant's dialing system, a critical issue in this case, would alone require the

13

parties to hire technical experts to analyze and opine upon those technologies at a significant cost. Additional substantial expenses would be incurred for expert reports and travel related to inspections and expert depositions.

Here, there is no question that continued litigation and discovery in this case would be expensive.  Further, the law firms representing both Parties have a reputation for high quality representation in complex and class action litigation, and would zealously pursue their client's positions in a manner that would likely result in protracted litigation through trial and appeal. "Considering the expense of a complex, protracted trial and associated risks inherent in all trials, compared to the immediate and guaranteed benefits of settlement, [the parties' proposed] settlement is in the best interest of the Class." *Rougvie v. Ascena Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 99235, at *53.  Accordingly, the first *Girsh* factor weighs in favor of settlement.

**b)**       **The Class's Reaction to the Settlement**

Because the deadline has not yet passed for filing a Claim Form, requesting exclusion from the Settlement, or objecting to the Settlement, Plaintiff will addressed this factor in his supplemental filing due on September 29, 2016, in advance of the Final Approval Hearing scheduled for October 7, 2016.  Dkt. 25, Preliminary Approval Order at ¶ 21.

**c)**       **The Stage of Proceedings and Amount of Discovery Completed**

Class counsel obtained sufficient information through informal discovery from which it could gain an adequate appreciation of the merits of the case.  Where Class Counsel had an "adequate appreciation of the merits of the case before negotiating [the settlement]," the third *Girsh* factor favors final approval of the Settlement, even where no formal discovery was conducted.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 813; *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[W]e are

14

not compelled to hold that formal discovery was a necessary ticket to the bargaining table. Because the plaintiffs did have access to information, this case cannot be characterized as an instance of the unscrupulous leading the blind.").

The circumstances here favor final approval because pursuant to the Parties' agreed ADR process, Plaintiff's Counsel received sufficient information and data to evaluate the strengths and weaknesses of the claims, including critical issues such as the lack of proper consent and the ascertainability of the Class.  Indeed, prior to entering settlement negotiations, the Parties had multiple telephone conferences to discuss the possibilities of attempting to reach an early resolution of this case through ADR.  Once it appeared that Defendant was open to the idea of ADR, the parties exchanged ideas for developing parameters to conduct ADR-related discovery. Among other things, the Parties agreed that Defendant would produce a random sample of the customer information forms that Defendant used when interviewing potential customers. Defendant also agreed to disclose the total number of unique cell phone numbers that Defendant called (*i.e.*, the likely members of the Class).  Only after Defendant produced the documents from the random sample, Plaintiff's Counsel concluded that they had sufficient information on which to evaluate proposed settlement terms.  Stock Decl. ¶¶ 13-14.

### d)      The Risks of Establishing Liability and Damages

*Girsh* factors four and five -- the risks of establishing liability and proving damages -- "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."  *In re Prudential*, 148 F.3d at 319.  In examining these factors, the Court "need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying

15

case, and the possible defenses which may be raised to their causes of action.'" *Perry* v. *FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (citation omitted).

Here, Class Members would likely face significant obstacles in prosecuting their claims if this litigation continued. *Accord In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2000 WL 1222042, at *61 (E.D. Pa. Aug. 28, 2000) ("Although the court makes no determination of the merits of the claims of plaintiffs, it notes several obstacles that they would have to overcome ... [noting, among other things, the speculative nature of future medical costs, debate over defendant's awareness of the dangers posed by their products, causation issues, defenses of comparative and contributory negligence, scientific complexity of the case, and statute of limitations defenses].... These risks to establishing liability and damages show that plaintiffs' success at trial cannot be guaranteed. Thus, these factors weigh in favor of settlement.").

For example, in order to succeed on the merits, Plaintiff would be required to prove that Defendant contacted him and the members of the Class on their cell phone via ATDS without prior express written consent. It is likely Defendant would contend that the unsigned customer information form(s) it allegedly obtained from Plaintiff and Class members, as well as consent acknowledgements Class Members may have made via certain websites, constitute legally sufficient consent under the TCPA. While the Parties dispute the merits of Defendant's position, it is nonetheless a defense Plaintiff would be required to overcome. If Defendant were to be successful on such a defense, Plaintiff's claims would likely be defeated. Moreover, additional risk and uncertainty would result from any appeal Defendant might take to the Third Circuit on issues ranging from class certification to liability to damages. Thus, while Plaintiff is confident in the merits of his claims, Plaintiff and his counsel recognize and appreciate the many potential

obstacles, risks and uncertainties Plaintiff would face in continued litigation.  Again, the above weighs strongly in favor of approving the Settlement.

### e)   The Risk of Maintaining the Class Action Through Trial

The sixth *Girsh* factor asks whether the class action could be maintained through trial, or whether it would pose "intractable management problems if it were to become a litigation class and therefore be decertified." *In re Warfarin,* 391 F.3d at 537.  As the Third Circuit has explained, "under Federal Rule of Civil Procedure 23(a), a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable," and "proceeding to trial would always entail the risk, even if slight, of decertification." *Cendant*, 264 F.3d at 239 (internal quotation marks omitted).

Here, in continued litigation, Defendant could well be expected to vigorously oppose class certification on a contested motion or on a subsequent appeal.  Among other things, Defendant could be expected to argue that individual issues defeat predominance and superiority and that the class is not ascertainable.  Indeed, Defendant's lead counsel, Hinshaw & Culbertson LLP, is well known for its track record of successfully defending TCPA actions and other complex commercial cases.  *See, e.g., Blair v. CBE Group, Inc.*, 309 F.R.D. 621 (S.D. Cal. 2015) (denying class certification in TCPA case based on predominance).  Given the risks and uncertainties attendant to continued litigation, this factor too favors settlement.

### f)   Ability of Defendant to Withstand a Greater Judgment

"The ability of defendants to withstand a greater judgment generally only comes into play when 'a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement.'" *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d at 744 (quoting *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011).

Nevertheless, court within the Third Circuit "'regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.'" *Id.* (citations omitted); *accord Rougvie v. Ascena Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 99235, at *63-64.

Here, if Plaintiff were to obtain a judgment in this case for the full amount of the relief sought (even before applying statutory penalties), the judgment would likely run into the hundreds of millions or billions of dollars.[8]  As a private, regional home improvement company, Defendant undoubtedly could not pay this amount or any amount close to it.  Put another way, a judgment in Plaintiff's favor in this litigation could bankrupt Defendant.  Absent specific evidence indicating that the defendant is at risk of insolvency for payment beyond the settlement amount, this factor is neutral.  Notably, however, as this Court has found, where a defendant, such as PHRG, has "voluntarily ceased all objectionable practices …. Plaintiffs' settlement is adequate compared to the best possible recovery." *Id.* at *63.

### g)      The Range of Reasonableness of the Settlement

There is no doubt this settlement falls into the range of reasonableness when compared to similar cases.  "While the court is obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, it must also recognize that settlement typically represents a compromise and not hold counsel to an impossible standard." *In re Aetna Inc. Secs. Litig.*, MDL No. 1219, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001).

---

[8]  For each violation, the TCPA provides that a consumer may recover $500 in damages and up to $1,500 for willful or knowing violations.  47 U.S.C. § 227(b)(3).  Thus, if PHRG called each of the 1.1 million cell phone numbers without the consent required by the TCPA only one time, the damages would range from $550 million to $1.65 billion.  Devery Decl. ¶ 6.  Based on information received, PHRG likely called each of those numbers numerous times, thus increasing by multiples the potential damage estimates.

18

Here, based on the claims received and processed to date, it is currently estimated that the Settlement will provide each Authorized Claimant with a payment of approximately $32.  Stock Decl. ¶ 24.[9]  As such, the value of the Settlement is squarely in line with other TCPA settlements. *See, e.g.*, *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) ($30); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 790 ("It also bears mention that the $34.60 per claimant recovery in this case does not seem so miniscule in light of the fact that class members did not suffer any actual damages beyond a few unpleasant phone calls ….").

### 3. The *Prudential* and *Baby Products* Considerations Are Also Satisfied

The Third Circuit expanded the *Girsh* factors to include, where appropriate, additional factors known as the *Prudential* considerations:  "'the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other facts that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass …; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.'"  *Rougvie v. Ascena Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 99235, at *63-64

---

[9] Following the September 14, 2016 deadline for Class Members to file Claim Forms, Plaintiff will provide an updated estimate of an Authorized Claimant's payment in the supplemental filing due on September 29, 2016, in advance of the Final Approval Hearing scheduled for October 7, 2016.  Dkt. 25, Preliminary Approval Order at ¶ 21.

19

(quoting *In re Prudential*, 148 F.3d at 323).  Many of the above *Prudential* factors, including an award of attorneys' fees, are addressed above or in Plaintiff's Counsel's separate motion for approval of attorneys' fees and costs.  Notably, however, the Third Circuit has also instructed courts to consider the "'degree of direct benefit provided to the class.'"  *Id.* (quoting *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013)).

Here, unlike cases where a settlement sets aside funds for *cy pres* (such as in *In re Baby Products*) or where the true benefit of the settlement may be unclear (such as in *Ascena Retail* where vouchers were to be issued), the full cash Net Settlement Amount will be equally and equitably distributed to Authorized Claimants.  *See* Settlement ¶¶ 1.31, 2.2, 3.6; Notice at p. 2 ("Authorized Claimants will receive equal shares of the Net Settlement Amount.").  This Plan of Allocation also warrants approval.  As courts have recognized in other TCPA cases, "[e]ach class member suffered roughly the same alleged injury:  receipt of at least one phone." *Gehrich v. Chase Bank U.S.*, 2016 U.S. Dist. LEXIS 26184, at *13.  While "the TCPA provides for statutory damages per violation, …. conducting individual inquiries into the number of violations for each class member either would be administratively unmanageable or … would deplete the settlement fund through vastly increased administrative expenses, reducing the amount available to claimants and increasing the delay in receiving their awards.  *Id.* at 34 (citing *In re Capital One*, 80 F. Supp. 3d at 793).  *Accord Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 327 (3d Cir. 2011) ("A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'") (citation omitted).

## V.   <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court grant this Motion and enter the Parties' proposed Final Approval Order and Entry of Judgment.

20

Dated:  August 23, 2016                      Respectfully submitted,

                                             BERGER & MONTAGUE, P.C.


                                               /s/  Arthur Stock
                                             Shanon J. Carson (Pa. Bar #85957)
                                             scarson@bm.net
                                             Arthur Stock (Pa. Bar #64336)
                                             astock@bm.net
                                             Lane L. Vines (Pa. Bar #80854)
                                             lvines@bm.net
                                             1622 Locust Street
                                             Philadelphia, PA  19103
                                             Tel:  (215) 875-3000
                                             Fax:  (215) 875-4604

                                             HUGHES ELLZEY, LLP
                                             W. Craft Hughes
                                             craft@hughesellzey.com
                                             Jarrett L. Ellzey
                                             jarrett@hughesellzey.com
                                             2700 Post Oak Blvd., Ste. #1120
                                             Galleria Tower I
                                             Houston, TX  77056
                                             Tel.:  (888) 350-3931
                                             Fax:  (888) 995-3335

                                             *Counsel for Plaintiff and the Class*